UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY SMITH,

      Plaintiff,

    v.

RALPH DIAZ, et al.,

      Defendants.

No.  2:20-cv-1004 CKD P

ORDER

Plaintiff is proceeding pro se and seeking damages pursuant to 42 U.S.C. § 1983.  The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  ECF No. 99.  Plaintiff proceeds with the following claims presented in his second amended complaint (ECF No. 36):

1.  Under the heading for "CLAIM I":

    A.  Claims arising under the Eighth Amendment for excessive force against defendants Standfields and Terry as described on pages 6 and 7.

    B.  Claims against defendant Calderon and Andrade arising under the Eighth Amendment for excessive force related to the use of pepper spray as described on pages 5 and 6.

2.  Under the heading for "CLAIM II":

    A.  A claim for excessive force in violation of the Eighth Amendment against

1

defendant Fujiwara related to a cell extraction on June 17, 2016.

B. A claim for excessive force in violation of the Eighth Amendment against defendant Stinson based upon plaintiff's allegations that Stinson poured feces and urine on plaintiff during the same cell extraction.

C. Claims arising under the Eighth Amendment against defendants Balbasova and Fujiwara for denying plaintiff medical care after the cell extraction.

3. Under the heading "CLAIM III":

A. A claim of excessive force against defendant Romney for applying handcuffs too tightly as described on pages 10 and 11 of plaintiff's second amended complaint.

4. Under the heading for "CLAIM V"[1]:

A. A claim that the medical care plaintiff received from defendant Bodenhamer following the excessive force alleged by plaintiff against defendants Stansfield and Terry identified above violates the Eighth Amendment.

ECF Nos. 38, 46, 74 & 78.

Defendants have filed a motion for summary judgment as to all claims except the claim arising under "CLAIM III" against defendant Romney and the claim arising under "CLAIM I" against defendants Standfields and Terry.

I.      Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

---

[1] CLAIM IV was dismissed on January 25, 2023. ECF No. 46.

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely on the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must show that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475

U.S. at 587.  That said, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . .   Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

II.    Defendant Fujiwara - Excessive Force[2]

In his second amended complaint, signed under the penalty of perjury and under the heading for "CLAIM II," plaintiff alleges that on June 17, 2016, he reported that he was suicidal and swallowed 40 Tylenol pills in the presence of two correctional officers.  Shortly thereafter, at about 7:45 a.m., defendant Sgt. Fujiwara appeared at plaintiff's cell.  Plaintiff again reported that he was suicidal, asked to see the captain, and sat on his bunk.  At 8:30 a.m., plaintiff's cell door was opened and a cell extraction team entered.  Plaintiff was knocked down, kicked, stomped, punched and dragged out of his cell.   Ultimately, plaintiff was placed in a holding cage.  Later, plaintiff was told by Captain Jones that she authorized the cell extraction based upon Sgt. Fujiwara's report that plaintiff was non-responsive.

In his declaration (ECF No. 108-9), Sgt. Fujiwara confirms that he went to plaintiff's cell on the morning of June 17, 2016, after it had been reported to him that plaintiff had ingested a handful of pills:

> I responded to Plaintiff's cell to convince him to submit to being placed in restraints and exit the cell.  Plaintiff ignored my attempts to talk to him. Plaintiff was pacing around his cell and not responding to my attempts to convince him to submit to restraints to exit the cell. I believed Plaintiff was attempting suicide and was engaged in self-harm because he ingested unidentified pills and would not talk to me. Plaintiff's attempted suicide and self-harm made me fear for his safety and wellbeing. Based on my belief that Plaintiff was attempting suicide and was engaged in self-harm, and my fear for his safety and well-being, I believed an immediate cell extraction was warranted to gain control of Plaintiff, remove him from his cell,

---

[2] The claims addressed herein are presented in chronological order of the supporting facts, not the order appearing in the second amended complaint.

> ultimately to protect Plaintiffs health and safety by escorting him to medical staff, where he could be medically evaluated regarding the unidentified pills he ingested. . .

> While the Floor Officers entered Plaintiff's cell, I stood in the frame of the door of plaintiff's cell to supervise the immediate extraction. Plaintiff was sitting on his bed, providing no resistance. The four Floor Officers placed Plaintiff in handcuffs and leg restraints and removed him from the cell.

> Next, Officer Stinson and I escorted Plaintiff out of the Al Housing Unit in the [Psychiatric Services Unit] and placed him in a holding cell in the A 1 Rotunda.

In his opposition, plaintiff agrees that he refused to exit the cell when prompted by Sgt. Fujiwara. Plaintiff again asserts he sat on his bunk and asked to speak with the captain. ECF No. 115-1 at 3. Nothing suggests plaintiff ever agreed to voluntarily exit his cell, even after the extraction process commenced.

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on inmates which has been defined as "the unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7 (1992).

Under the circumstances presented, there is no genuine issue of material fact as to whether Sgt. Fujiwara subjected plaintiff to excessive force in ordering that officers enter plaintiff's cell and remove him considering his apparent attempt at suicide and plaintiff's refusal to speak with Fujiwara. Fujiwara was not physically involved in the removal of plaintiff from his cell, and nothing suggests that he ordered that any excessive force be used. For these reasons, Sgt. Fujiwara is entitled to summary judgment as to plaintiff's excessive force claim related to the forced removal of plaintiff from his cell on June 17, 2016.

III.    Defendant Stinson - Excessive Force

Under the heading for "CLAIM II" plaintiff claims defendant Stinson poured feces and urine on plaintiff during the June 17, 2016, cell extraction. In his declaration attached to

5

defendants' motion for summary judgment, defendant Stinson denies this. There is no evidence before the court suggesting Stinson poured feces and urine on plaintiff other than plaintiff's assertion in his second amended complaint and, in his opposition to defendants' motion for summary judgment, plaintiff seemingly admits Stinson did not pour feces and urine on him. ECF No. 115 at 5 (plaintiff's responses to defendants' undisputed facts numbers 14 and 15). Even if plaintiff persists with that assertion, the court finds that, taking the record as a whole, no rational trier of fact could find in favor of plaintiff's claim. Defendants are entitled to summary judgment as to plaintiff's remaining claim against defendant Stinson.

IV.    Defendants Balbasova and Fujiwara - Denial of Medical Care

Plaintiff alleges that after he was placed in the A 1 Rotunda holding cell following removal from his cell, he was visited by defendant Nurse Balbasova. After asking plaintiff his name, she was called away by Sgt. Fujiwara. After that, she exited the building where plaintiff was housed. Later, plaintiff was taken to the "triage and treatment area" (TTA) where plaintiff was examined and treated."

In her declaration (ECF No. 108-5), Nurse Balbasova indicates she arrived at the holding cell shortly after 8:43 a.m. She made the decision that plaintiff should be transported to the TTA and escorted plaintiff via wheelchair around 9:05 a.m.

Denial or delay of medical care can violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A violation occurs when a prison official causes injury as a result of his or her deliberate indifference to a prisoner's serious medical needs. Id.

Here, the relatively brief period-of-time between the removal of plaintiff from his cell, at 8:30 a.m., and his arrival in the TTA, around 9:05 a.m., does not amount to delay suggesting deliberate indifference. Also, plaintiff fails to point to anything suggesting he suffered any actionable injury as a result of the brief delay. For these reasons, Sgt. Fujiwara and Nurse Balbasova are entitled to summary judgment as to plaintiff's claim that they delayed in providing him medical care.

V.    Defendants Calderon and Andrade - Excessive Force

Under the heading for "CLAIM I," plaintiff alleges that on the morning of July 30, 2016,

6

he cut his left wrist with a razor blade, showed it to defendant Calderon, and reported he was suicidal. Eventually, Calderon ordered plaintiff to "cuff up" (by putting his hands through his food port). Plaintiff refused and told Calderon to call his supervisor. Calderon later returned with defendant Andrade who also ordered plaintiff to "cuff up." Plaintiff refused and again demanded to see a supervisor. Defendant Andrade ordered plaintiff to "cuff up" a second time and plaintiff again refused. Andrade then ordered Calderon to shoot pepper spray into plaintiff's cell through his food port. Andrade closed the door to food port and waited five minutes before ordering plaintiff, again, to cuff up. Plaintiff refused. Pursuant to Andrade's order, Calderon sprayed a second time and again the door to the food port was closed for 5 minutes. When plaintiff refused Andrade's third order to "cuff up," Andrade instructed Calderon to hit his alarm button. Plaintiff does not assert he suffered any serious injuries as a result of the pepper spray.

Defendants Andrade and Calderon provide a significantly different account as to how plaintiff came to be pepper sprayed on July 30, 2016. But, even taking the material portions of plaintiff's version of the events as the court must, there is not a genuine issue of material fact as to whether plaintiff's being pepper sprayed amounted to excessive force. Defendants were within the law to force plaintiff out of his cell since plaintiff reported he was suicidal, had already hurt himself, and refused to come out of his cell by refusing multiple times to accept handcuffs. Even the pepper spray was not effective at getting plaintiff to come out of his cell, as plaintiff admits that he only exited his cell after officers entered the cell, placing themselves in danger, and placed him in handcuffs. ECF No. 36 at 6. Plaintiff had no Eighth Amendment right to discuss his predicament with a supervisor other than Andrade. For all of these reasons, the court finds that defendants Andrade and Calderon are entitled to summary judgment as to plaintiff's claim concerning the use of pepper spray.

VI.    Defendant Bodenhamer – Medical Care

In "CLAIM V" plaintiff asserts that following a July 30, 2016, physical encounter with defendants Standfields and Terry (which followed the use of pepper spray by defendant Calderon described above) he was provided medical care by Dr. Myers who prescribed Tylenol 3. Plaintiff alleges this medication was discontinued by defendant Bodenhamer sometime before August 3,

7

2016.  In his opposition to the pending motion for summary judgment, plaintiff asserts he saw Bodenhamer at a "doctor's line" on either August 1 or 2; Bodenhamer conducted a physical exam of plaintiff and terminated Tylenol 3.  ECF No. 115 at 10.

Plaintiff's medical records indicate that Dr. Myers prescribed a single dose of 2 tablets of Tylenol 3 on July 30.  ECF No. 108-6 at 14.   In her declaration, Bodenhamer indicates that following plaintiff's July 30, 2016, visit with Dr. Myers, she did not see plaintiff until August 3, 2016, after plaintiff claimed he had ingested a razor blade which caused Bodenhamer to order plaintiff's transfer to San Joaquin County General Hospital.  ECF No. 108-6 at 4.

Again, a violation of the Eighth Amendment occurs when a prison official causes injury as a result of his or her deliberate indifference to a prisoner's serious medical needs.  Estelle, 429 U.S. at 104-05.

Nothing before the court suggests that plaintiff was ever prescribed more than a single dose of Tylenol 3 between July 30 and his transfer to the San Joaquin County Jail on August 3, 2016 (when his treatment was left to medical professionals there) so nothing suggests a prescription for Tylenol 3 was ever discontinued by defendant Bodenhamer.  Further, even if plaintiff was seen by Bodenhamer on either August 1 or 2, 2016, plaintiff does not indicate he informed Bodenhamer that plaintiff was in pain, that he requested another dose of Tylenol 3, or that he requested any other pain medication.  Considering these facts together with the fact that there is no medical record of plaintiff seeing Bodenhamer on either August 1 or 2, 2016, the court cannot find, on the record before the court, that a rational trier of fact could find defendant Bodenhamer violated plaintiff's Eighth Amendment rights by discontinuing a prescription for Tylenol 3 after the alleged use of excessive force by defendants Standfields and Terry on July 30, 2016, and before plaintiff's transfer to San Joaquin General on August 3, 2016.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgement (ECF No. 108) is GRANTED.

2. Plaintiff's remaining claims appearing under the heading "CLAIM II" in plaintiff's second amended complaint for excessive force in violation of the Eighth Amendment against defendant Fujiwara and Stinson are DISMISSED.

3.  Plaintiff's remaining Eighth Amendment denial of medical care claims against defendants Fujiwara and Balbasova appearing under the heading for "CLAIM II" in plaintiff's second amended complaint are DISMISSED.

4.  Plaintiff's remaining Eighth Amendment excessive force claims against defendants Calderon and Andrade for use of pepper spray appearing under the heading for "CLAIM I" in plaintiff's second amended complaint are DISMISSED.

5.  Plaintiff's claim arising under the Eighth Amendment concerning defendant Bodenhamer's discontinuation of a prescription for Tylenol 3 on or around August 1, 2016, appearing under the heading "CLAIM V" in plaintiff's second amended complaint is DISMISSED.

6. Defendants Stinson, Fujiwara, Balbasova, Calderon, Andrade and Bodenhamer are DISMISSED from this action.

7.  This matter is referred to the court's Alternative Dispute Resolution Coordinator for settlement conference proceedings concerning plaintiff's two remaining claims.

Dated:  March 18, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
smit1004.msj